BRYANT, Judge.
 

 *296
 
 Where respondent never presented the issue that he now raises on appeal to the trial court and completely failed to meet his burden of showing the provisions of the Indian Child Welfare Act apply to this case, we affirm.
 

 The Burke County Department of Social Services ("DSS") initiated the underlying juvenile case on 1 May 2015 when it filed a petition alleging L.W.S. ("Luke")
 
 [1]
 
 was an abused, neglected, and dependent juvenile. DSS obtained nonsecure custody of Luke that same day and retained custody of him throughout the case. After a hearing on 3 March 2016, the trial court entered an order adjudicating Luke to be an abused, neglected, and dependent juvenile. The court found that both respondent and Luke's mother had pending criminal charges of felony child abuse inflicting serious injury to Luke, that respondent and the mother had relinquished
 
 *297
 
 their parental rights to two previous children, and that respondent and the mother had been involved in several past incidents of domestic violence in front of their children. The court ceased reunification efforts with respondent and Luke's mother and set the matter for a permanency planning hearing on 31 March 2016. In its order from the permanency planning hearing, the trial court set
 
 *818
 
 the permanent plan for Luke as adoption with a concurrent plan of custody or guardianship. Respondent was subsequently found guilty of felony child abuse and sentenced to a term of sixty to eighty-four months imprisonment.
 

 On 1 August 2016, DSS filed a petition to terminate parental rights to Luke. As to respondent, DSS alleged grounds of abuse, neglect, failure to correct the conditions that led to Luke's removal from his home, failure to pay a reasonable portion of the cost of Luke's care while Luke was in DSS custody, abandonment, and that respondent had committed a felony assault against Luke that resulted in serious bodily injury.
 
 See
 
 N.C. Gen. Stat. § 7B-1111(a)(1)-(3), (7)-(8) (2015). DSS filed an amended petition for termination of parental rights on 22 August 2016, alleging the same grounds as the first petition but correcting the mother's name.
 

 After a hearing on 27 October 2016, the trial court entered an order on 28 November 2016 terminating respondent's parental rights to Luke.
 
 [2]
 
 The court concluded all grounds alleged in the petition existed to terminate respondent's parental rights and that termination of his parental rights was in Luke's best interest. Respondent filed timely written notice of appeal from the trial court's order.
 

 _________________________
 

 Respondent's sole argument on appeal is that the trial court erred in terminating his parental rights to Luke because it failed to address whether Luke was a member of a Native American tribe and whether the Indian Child Welfare Act applied to him. We disagree.
 

 "The Indian Child Welfare Act of 1978 (hereinafter ICWA or Act) was enacted to 'protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.' "
 
 In re A.D.L.
 
 ,
 
 169 N.C.App. 701
 
 , 708,
 
 612 S.E.2d 639
 
 , 644 (2005) (quoting
 
 25 U.S.C.A. § 1902
 
 (2005) ).
 

 There are two prerequisites to invoking the requirements of ICWA. First, it must be determined that the proceeding
 
 *298
 
 is a "child custody proceeding" as defined by the Act. Once it has been determined that the proceeding is a child custody proceeding, it must then be determined whether the child is an Indian child.
 

 Id.
 

 (internal citations omitted). " 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]"
 
 25 U.S.C. § 1903
 
 (4) (2006).
 

 In any involuntary proceeding in a state court where the court knows or has reason to know that an Indian child is involved, and where the identity of the child's Indian parents or custodians or tribe is known, the party seeking the ... termination of parental rights to[ ] an Indian child shall directly notify the Indian parents, Indian custodians, and the child's tribe by certified mail with return receipt requested of the pending proceedings and of their right of intervention.
 

 25 C.F.R. § 23.11
 
 (a) (2011).
 
 [3]
 
 "The burden is on the party invoking [ICWA] to show that
 
 *819
 
 its provisions are applicable to the case at issue, through documentation or perhaps testimony from a tribe representative."
 
 In re C.P.
 
 ,
 
 181 N.C.App. 698
 
 , 701-02,
 
 641 S.E.2d 13
 
 , 16 (2007) (citing
 
 In re Williams
 
 ,
 
 149 N.C.App. 951
 
 , 957,
 
 563 S.E.2d 202
 
 , 205 (2002) ).
 
 [4]
 

 *299
 
 In support of his argument on appeal, respondent directs this Court's attention to an identical sentence from two court reports prepared by a DSS social worker on 3 and 16 March 2016, which state: "[Respondent] indicated he is Cherokee on [Luke's] birth certificate. The Department contacted the tribe regarding [respondent's] claim and did not receive a response." The statement that respondent indicated he is Cherokee on Luke's birth certificate is, however, demonstrably untrue, as shown by the copies of Luke's birth certificate included in the record on appeal. Luke's birth certificate does not include any statement that either respondent or Luke are Cherokee and does not have a section in which a parent's or child's American Indian heritage, or lack thereof, could be listed. Moreover, although the order terminating respondent's parental rights is silent as to the applicability of ICWA, we note the trial court repeatedly found in its orders entered in the underlying juvenile case, including the initial adjudication and disposition order, that ICWA does not apply to this matter.
 

 Respondent never presented the issue to the trial court that he now raises on appeal and completely failed to meet his burden of showing the provisions of ICWA apply to this case.
 
 See
 

 Williams
 
 ,
 
 149 N.C.App. at 956-57
 
 ,
 
 563 S.E.2d at 205
 
 ("Equivocal testimony of the party seeking to invoke the Act, standing alone, is insufficient to meet this burden.");
 
 see also
 

 In re A.R.
 
 ,
 
 227 N.C.App. 518
 
 , 523-25,
 
 742 S.E.2d 629
 
 , 633 (2013) (noting that a "mere belief" that a child is an Indian child covered under the ICWA, without more, does not meet a parent's burden of showing ICWA applies in a Chapter 7B proceeding, but "err[ing] on the side of caution by remanding for the trial court to determine the results of the ... 'investigation' and to ensure that the ICWA notification requirements, if any, are addressed as early as possible"). Accordingly, this argument is overruled. Respondent does not otherwise challenge the trial court's order terminating his parental rights to Luke, and it is hereby affirmed.
 

 AFFIRMED.
 

 Judges HUNTER, JR., and MURPHY concur.
 

 [1]
 

 A pseudonym is used throughout to protect the juvenile's privacy pursuant to N.C. R. App. P. 3.1(b) (2017).
 

 [2]
 

 The court's order also terminated the parental rights of Luke's mother, but she is not a party to this appeal.
 

 [3]
 

 On 14 June 2016, a new subpart, Subpart I, was added to the Department of the Interior's regulations implementing ICWA.
 
 See
 

 25 C.F.R. §§ 23.101
 

 et seq.
 
 (2017) ;
 
 Indian Child Welfare Act Proceedings
 
 ,
 
 81 Fed. Reg. 38,867
 
 (June 14, 2016) (to be codified at 25 C.F.R. pt. 23) (effective 12 December 2016) ("The final rules adds [sic] a new subpart to the Department of the Interior's (Department) regulations implementing ... [ICWA], to improve ICWA implementation. The final rule addresses requirements for State courts in ensuring implementation of ICWA in Indian child-welfare proceedings and requirements for States to maintain records under ICWA."). Among other things, the newly-added Subpart I provides that "[t]he Indian Tribe of which it is believed the child is a member ... determines whether the child is a member of the Tribe" and further provides that this determination "
 
 is solely within the jurisdiction and authority of the Tribe
 
 ...."
 
 25 C.F.R. § 23.108
 
 (a) -(b) (2017) (emphasis added). Subpart I also provides that "[p]rior to ordering an involuntary ... termination of parental rights, the court must conclude that active efforts have been made to prevent the breakup of the Indian family and that those efforts have been unsuccessful[,]" and that those "[a]ctive efforts must be documented in detail in the record."
 
 25 C.F.R. § 23.120
 
 (a) -(b) (2017). However, because the order in the instant case was entered on 28 November 2016, before the effective date for new Subpart I (12 December 2016), Subpart I is not applicable to the instant case.
 

 [4]
 

 We note that, now, it seems to be the case that the burden has shifted to state courts to inquire at the start of a proceeding whether the child at issue is an Indian child, and, if so, the state court must confirm that the agency used due diligence to identify and work with the Tribe and treat the child as an Indian child unless and until it is determined otherwise.
 
 See
 

 25 C.F.R. § 23.107
 
 (a), (b)(1)-(2) (2017).